John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
402 W Broadway, Suite 1760
San Diego, CA 92101
Tel.:    (858) 209-6941
jnelson@milberg.com

Gary M. Klinger *(pro hac vice to be filed)*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

Kristen Lake Cardoso (State Bar # 338762)
cardoso@kolawyers.com
Jeff Ostrow (*pro hac vice to be filed*)
ostrow@kolawyers.com
Jonathan M. Streisfeld (*pro hac vice to be filed*)
streisfeld@kolawyers.com
Daniel Tropin (*pro hac vice to be filed*)
tropin@kolawyers.com
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
Fax: (954) 525-4300

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DASHAWN WILLIAMS and DEVON HOLMES, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLASS ACTION COMPLAINT**

Plaintiffs Dashawn Williams and Davon Holmes ("Plaintiffs"), on behalf of themselves and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION**

1. If a video advertisement autoplays for a bot on an unlisted webpage, does anyone hear it? According to Google, they do, and they charge advertisers hefty amounts for the privilege of autoplaying their advertisements into the void.

2. As a result, Plaintiffs bring this action on behalf of themselves, the general public with respect to injunctive relief, and Class of all similarly situated advertisers against Defendant Google, LLC ("Google"), arising from its unfair, deceptive, and unlawful practice of misleading advertisers about its "TrueView" video advertisements, which has bilked businesses out of billions of dollars spent on digital ads. These practices are also in breach of Google's agreements with advertisers (as well as agreements with advertisement firms for which the advertisers are third-party beneficiaries) and have unjustly enriched Google.

3. The scheme is simple. Google charges advertisers for its proprietary TrueView video ads. Google promises that TrueView advertisements must be skippable, audible, and playing of the video (and ad) cannot be solely initiated by passive user scrolling. However, this is not true: many of the TrueView advertisements are, in fact, displayed as muted, auto-playing videos either "out-stream" or obscured on independent sites.

4. Yet, Google charges a premium price, promising that the ads it places will run on high-quality sites, before the page's main video content, with the audio on, and that brands will only pay for ads that are not skipped.

5.    A recent report by ad campaign analytics firm Analytics' has exposed Google's scheme, demonstrates the gravity of Google's violations of its own policies, in depth.[1]

6.    In fact, with respect to placement of TrueView advertisements, Analytics' research suggests that Google violates these standards approximately 80% of the time for one sample client:



For a major infrastructure brand, only ~16% of their TrueView skippable in-stream video ad budget was spent on YouTube.com or YouTube's apps. The majority of their budget was spent on tens of thousands of different websites or mobile apps which make up the Google Video Partner (GVP) network. The majority of those GVP mobile apps and websites served the TrueView skippable in-stream video ads in outstream, muted, auto-playing, interstitial, and/or non-visible ad slots - which are inconsistent with the TrueView or skippable in-stream ad format.[2]

---

[1] https://adalytics.io/blog/invalid-google-video-partner-trueview-ads
[2] https://adalytics.io/blog/invalid-google-video-partner-trueview-ads

7.      This experience is representative: advertisers, contrary to their expectations, had their ads placed as "muted, auto-playing video ads on third party websites such as lebanonfiles.com and freewebnovel.com, or on foreign-developed Android mobile gaming apps for toddlers":



CLASS ACTION COMPLAINT



3

8. The TrueView practice is not only violative of Google's policies and promises and deceptive, but it serves no purpose but to further enrich Google who charges a premium for these TrueView advertisements and receives inflated payments due to artificial views of TrueView advertisements.

9. Plaintiffs and other consumers of advertising services have been injured by Google's breach of contract and violations of consumer protection statutes.

10. Further, Plaintiffs seek redress for Google's misleading and deceptive misrepresentations in its publicly available marketing materials, including its own policies, and for Google's omission of material facts pertaining to that practice in its publicly available marketing materials, including its own policies.

11. The general public relies on representations made by Google in these documents in making important financial decisions about how to advertise their businesses.

---

[3] *Id.*

12.     Members of the public considering advertising their business (or themselves) have the right to accurate information regarding the advertising platform that they are purchasing.

13.     Plaintiffs seek injunctive relief on behalf of the general public in order to prevent Google from continuing to make material misrepresentations and omissions in publicly available documents; misrepresentations and omission which prevent all California advertising consumers from accessing truthful and transparent information regarding Google's practices.

14.     Plaintiffs, on behalf of themselves and the Class (defined below), seeks to end Google's deceptive practices and force Google to refund overpayments for TrueView advertisements. Plaintiffs seek public injunctive relief, damages, and restitution, as set forth more fully below.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than Google.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Google is subject to personal jurisdiction here and regularly conducts business here, and because a substantial part of the events or omissions giving rise to the claims of Plaintiffs asserted herein occurred in this District.

## PARTIES

17.     Plaintiff Dashawn Williams is located in Yorktown, Virginia.

18.     Plaintiff Devon Holmes is located in Paramount, California.

19.     Defendant Google is an American multinational technology company with its headquarters and principal place of business located in Mountain View, California.   Among other things, Google sells TrueView advertisements, including to Plaintiffs and members of the putative Class.

### FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

#### *TrueView*

20.     TrueView is a proprietary form of video advertisements sold by Google. Google also refers to them as "Skippable in-stream video ads."[4]

21.     According to Google, TrueView is a "proprietary cost-per-view, choice-based ad format that serves on YouTube, millions of apps, and across the web."[5]

22.     Also per Google, when advertisers pay for TrueView, they pay for "for actual views of their ads, rather than impressions."[6]

23.     Google further promises "Advertisers only pay when a user chooses not to skip their ad."[7]

24.     When TrueView advertisements are presented in accordance with Google's representations, they appear in a video format and are audible when a user clicks to watch a video (usually at the beginning), and the user is given the opportunity to skip the advertisement.

25.     In other words, Google promises that these advertisements are "opt-in" for the user.

26.     TrueView advertisements are purported to be "in-stream advertisements":

---

[4] https://web.archive.org/web/20230407162300/https://www.thinkwithgoogle.com/future-of-marketing/creativity/skippable-in-stream/
[5] https://web.archive.org/web/20230129225020/https://support.google.com/displayvideo/answer/6274216#zippy=%2Ctrueview-in-stream-and-in-feed-video-ads
[6] https://web.archive.org/web/20230129225020/https://support.google.com/displayvideo/answer/6274216#zippy=%2Ctrueview-in-stream-and-in-feed-video-ads
[7] https://web.archive.org/web/20230505173848/http://www.richmediagallery.com/formats/detail?formats=googleAds&formatId=TrueView_In-Stream_Ad

7

**TrueView in-stream ads**

| When should I use it? | How does it work? | Where will the ads appear? | How will I be charged? |
|---|---|---|---|
| To promote video content alongside other videos on YouTube and partner sites and apps. | Your video ad plays before, during, or after other videos. After 5 seconds, the viewer has an option to skip the ad. | • YouTube videos<br>• Partners' sites, games, and apps | You pay when a viewer watches 30 seconds of your video (or the duration if it's shorter than 30 seconds) or engages with your video, whichever comes first. [8] |

27.    In-stream advertisements are those that stream along with a video, such as at the beginning of, or during, a YouTube video, analogous to previews before a movie or commercials during a television program. Out-stream advertisements are those that appear independently of any editorial video content.[9]

*TrueView's Promises to Advertisers*

28.    Google made numerous promises to advertisers regarding how TrueView advertisements would be displayed:

a)    Video ad placements must be audible by default.

b)    Scroll-to-play ads are not permitted for TrueView.

c)    For mid-rolls, the video content's duration must be at least 10 minutes.[10]

29.    Google's policies also state that "No more than one video ad placement may play in view at any given time."[11]

30.    Google also made promises to advertisers regarding where TrueView advertisements would and would not be displayed. Specifically, Google sells TrueView ins-

---

[8]https://web.archive.org/web/20230129225020/https://support.google.com/displayvideo/answer/6274216#zippy=%2Ctrueview-in-stream-and-in-feed-video-ads
[9] *Id.*
[10] https://support.google.com/admanager/answer/3522024?hl=en
[11] https://support.google.com/admanager/answer/3522024?hl=en

CLASS ACTION COMPLAINT

1   stream video advertisements with the promise to advertisers that such advertisements will be

2   served in-stream as opposed to "out-stream" or "non-in-stream."[12]

3   31.    Google also promises that "Google video partners are high-quality publisher

4   websites and mobile apps where you can show your video ads to viewers beyond YouTube" and

5   "Video partner publishers are carefully vetted and must meet Google's inventory quality

6   standards."[13]

7   32.    Googles' Video Ad Safety Promise states that "certain types of content can't be

8   monetized for ads on YouTube and Google video partners: we'll automatically apply exclusions

9   to prevent your ads from showing on the most controversial content, such as terrorist acts,

10   nudity, and recent sensitive events."[14]

11   33.    This Video Safety Promise reiterates that "Your ads automatically will be

12   excluded from showing on the following types of content, no matter what inventory type you

13   choose," and this list includes "Content discussing terrorism or sensitive current events like war,

14   death, or tragedy."[15]

15   34.    Google's policies state that "Google ads may not be displayed on websites with

16   content protected by copyright law."[16]

17   35.    Google also promises that "[a]dvertisers only pay when a user chooses not to skip

18   their ad,"[17] and "[i]f a viewer skips before 30 seconds or until duration if it's shorter than 30

---

[12] *See e.g.* https://blog.google/products/ads/a-new-video-format-to-reach-people/ (contrasting TrueView in-stream with outstream video advertisements).
[13] https://web.archive.org/web/20221208095742/https://support.google.com/google-ads/answer/7166933?hl=en
[14] https://web.archive.org/web/20230422185612/https://support.google.com/google-ads/answer/7515513?hl=en
[15] *Id.*
[16] https://web.archive.org/web/20221202100333/https://support.google.com/adsense/answer/2660562?hl=en#zippy=%2Ccopyright-infringement
[17] https://web.archive.org/web/20230505173848/http://www.richmediagallery.com/formats/detail?formats=googleAds&formatId=TrueView_In-Stream_Ad

9

seconds, there is no charge – which makes skippable in-stream ads a terrific playground for creative experimentation."[18]

### Google's Practices Differ from Their Promises and Policies

36.     TrueView advertisements were not displayed as promised. For example, contrary to Google's representations, TrueView advertisements were served on muted video players.[19]

37.     Also, contrary to Google's representations, TrueView advertisements were served as auto-playing videos or scroll-to-play advertisements. This means that rather than requiring a consumer to actually click on a video to see the advertisement, the video would effectively play on its own.[20] This has the material effect of downgrading the value of each "view," as some of these views would not be a view at all, and certainly not an intentional view.

38.     Contrary to the representations that multiple ads would not play at any given time, Adalytics observed instances of multiple TrueView advertisements being served for different advertisers simultaneously.[21]

39.     The skip button is also often hidden or obscured, in violation of Google's purported quality standards and the promise to only charge advertisers for completed advertisement views. This also has the effect of artificially inflating video completion rates, and by extension, the prices paid by advertisers.[22]

40.     Also, contrary to Google's stated policies, a large percentage of TrueView in-stream advertisements were placed out-stream rather than in-stream. This means that they were

---

[18] https://web.archive.org/web/20230407162300/https://www.thinkwithgoogle.com/future-of-marketing/creativity/skippable-in-stream/
[19] Adalytics Report.
[20] *Id.*
[21] *Id.*
[22] *Id.*

placed on websites or apps that do not have accompanying video content, improper in-article or in-feed placement, and on websites or apps which only have gaming content. [23]

41.     Further, TrueView advertisements were not displayed on high-quality websites and mobile apps, as promised. Contrary to Google's public documentation that represented that "Google video partners are high-quality publisher websites and mobile apps" that "are carefully vetted and must meet Google's inventory quality standards," the Adalytics Report "documented instances of TrueView advertisements serving on websites with tens of thousands of DMCA copyright violations, on websites discussing executions or children being murdered, on "made-for-advertising" sites, and on sites with no organic video media content. Furthermore, a significant amount of brands' ad budget was delivered on gaming apps that appear to be intended for young children."[24]

42.     Many advertisements were placed on low-quality "Made for Advertising" ("MFA") sites, *e.g.*, sites that have highly paid inbound traffic audience mix (*e.g.*, the majority of site visitors come to the site by first clicking on an ad, rather than through direct browsing, clicking on a backlink from another site, or through search engine results), excessively high density and frequency of advertisements (for example: showing 10+ ads at the same time, and refreshing the ad slots every few seconds), or click bait content, often syndicated across an entire family of MFA sites. [25]

---

[23] *Id*.
[24] *Id*.
[25] Adalytics Report (citing https://deepsee.io/blog/2-tales-one-site-how-arbitrage-sites-manipulate-metrics).

43.     Additionally, the Adalytics Report identified **202 different** Android apps on which TrueView advertisements were placed that plainly did not meet Google's inventory quality standards as they did not accurately include the "Contains ads" label. [26]

44.     TrueView advertisements were also placed on sites that were delisted from Google Search for copyright and piracy reasons, as well as websites that contain disinformation.[27]

45.     TrueView advertisements were also placed on "side-loaded" or "delisted" Apps.[28]

46.     Some TrueView advertisements were even placed on websites or apps developed in countries subject to US Treasury sanctions.[29]

47.     And, contrary to Google's promises that TrueView advertisements would not be placed on content discussing "terrorism or sensitive current events like war, death, or tragedy," the Adalytics Report observed many such instances.[30]

48.     Advertisers also paid for TrueView ad views that were inflated by several means, which were exacerbated by the above-listed breaches. Inflated views are material because Google promised to only charge per view.

49.     First, the skip button was obscured or otherwise inaccessible on many sites. This is especially harmful to advertisers because, per Google:

> Skippable in-stream ads (formerly called TrueView) appear before, during or after YouTube videos. Viewers are shown the first five seconds, then have the option to 'skip', so the sooner you draw them in and keep them engaged, the better. **If a viewer skips before 30 seconds or until duration if it's shorter than 30 seconds, there is no charge** – which makes skippable in-stream ads a terrific playground for creative experimentation.[31]

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] https://web.archive.org/web/20230407162300/https://www.thinkwithgoogle.com/future-of-marketing/creativity/skippable-in-stream//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

50.    Second, consumers on some sites were shown the exact same TrueView advertisement over and over, as many as 20 to 42 times in the space of merely a few minutes.

51.    Finally, the advertisements were served to web-crawling bots, including **bots run by Google itself**.[32] So, rather than paying for actual plays from actual potential customers, Google deceived advertisers into paying for advertisement views by Google bots itself.

52.    This is especially damaging because TrueView advertisements were improperly served as auto-playing videos; thus, a bot would not need to click on the video itself to trigger a view, only visit the page where it is hosted.

D.    **Plaintiffs' Experience**

***Plaintiff Dashawn Williams***

53.    Plaintiff Dashawn Williams paid Google to runs ads for his business in or about January 2022.

54.    If Plaintiff Williams knew that Google's representations regarding the qualities of its ad services were not accurate, he would not have paid for Google's services.

55.    As a result of Google's misconduct, Plaintiff Williams suffered injury in fact in the form of receiving an advertising service of a lesser value than the bargain he struck with Google.

***Plaintiff Devon Holmes***

56.    Plaintiff Devon Holmes paid Google, through the marketing company Sprizzy, to runs ads for his business in or about April 2023.

57.    If Plaintiff Holmes knew that Google's representations regarding the qualities of its ad services were not accurate, he would not have paid for Google's services.

---

[32] Analytics Report.

CLASS ACTION COMPLAINT

58.     As a result of Google's misconduct, Plaintiff Holmes suffered injury in fact in the form of receiving an advertising service of a lesser value than the bargain he struck with Google.

## CLASS ALLEGATIONS

59.     Plaintiffs bring this action on behalf of itself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

60.     The proposed "Class" is defined as:

> All advertisers who paid for TrueView in-stream advertisements during the applicable statute of limitations through the date of class certification.

61.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

62.     Excluded from the Class is Google, its parents, subsidiaries, affiliates, officers and directors, any entity in which Google has a controlling interest, all advertisers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

63.     The members of the Class are so numerous that joinder is impractical.  The Class consists of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Google's records.

64.     The claims of the representative Plaintiffs are typical of the claims of the Class it seeks to represent in that the representative Plaintiffs, like all members of the Class, were charged improper and deceptive amounts as alleged herein. The representative Plaintiffs, like all members of the Class, were damaged by Google's misconduct in that it paid for the deceptively marketed and overpriced TrueView advertisements. Furthermore, the factual basis of Google's misconduct is common to all members of the Class and represents a common thread of unfair

and unconscionable conduct resulting in injury to all members of the Class. And Google has no unique defenses that would apply to Plaintiffs and not the Class.

65.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

66.     Among the questions of law and fact common to the Class include the following:

a.     Whether Google violated the consumer protection laws of California by charging a premium price for TrueView advertisements, and whether it's conduct was deceptive;

b.     Whether Google misrepresented whether it would place TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications;

c.     Whether Google overcharged advertisers for artificially inflated page views;

d.     Whether Google breached its contract with members of the Class by placing TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications;

e.     Whether Google breached the duty of good faith and fair dealing;

f.     The proper method or methods by which to measure damages and/or restitution and/or disgorgement;

g.     Whether Google was unjustly enriched; and

h.     Whether Plaintiffs and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

67.    Plaintiffs' claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful Google TrueView advertising policies and practices. Plaintiffs suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

68.    Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions alleging deceptive and unfair business practices. Accordingly, Plaintiffs are an adequate representative and will fairly and adequately protect the interests of the Class.

69.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Class claim is small relative to the complexity of the litigation, and due to the financial resources of Google, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Google's misconduct will proceed without remedy.

70.    Even if members of the Class themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

71.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

72.    Google has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

73.    All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract Including Breach of the**
**Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

74.    Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

75.    Plaintiffs' purchases of TrueView advertisements are governed by Google's publicly available policies as cited herein, which are incorporated into the contract ("Account Documents") between Google and Plaintiffs (and members of the putative Class).

76.    Plaintiffs (and fellow members of the Class) and Google have contracted for TrueView advertising services in the Account Documents, which incorporates Google's public policies on advertising.

77.    As alleged above, the Account Documents bar Google from by placing TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications.

78.    Google breached the terms of the Account Documents with advertisers by placing TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications.

79.    Google also breached the terms of the Account Documents with advertisers by overcharging for inflated views of advertisements.

80.    Under the laws of each state where Google does business and has advertisers, good faith is an element of every contract. Whether by common law or statute, all such contracts

impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

81.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

82.     Google has breached the covenant of good faith and fair dealing in the Account Documents through its TrueView advertising policies and practices as alleged herein.

83.     Instead of exercising that discretion in good faith and consistent with Plaintiff's reasonable expectations, Google abuses that any discretion afforded to it by the contract by placing TrueView as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications without their permission and contrary to its reasonable expectations.

84.     Google also breached its duty of good faith and fair dealing by overcharging for inflated views of advertisements.

85.     Google further breaches the covenant of good faith and fair dealing by placing TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications because by exercising its discretion to enrich itself by gouging its advertisers for subpar services, Google consciously and deliberately frustrates the agreed

common purposes of the contract and disappoints the reasonable expectations of Plaintiffs and members of the Class, thereby depriving them of the benefit of their bargain.

86.     In addition, to the extent that Google grants itself discretion to placing TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications, when it places TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications, Google breaches the covenant of good faith and fair dealing.

87.     Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

88.     Plaintiffs and members of the Class have sustained damages as a result of Google's breach of contract and breach of the covenant of good faith and fair dealing.

89.     To the extent Plaintiffs and fellow members of the Class hired advertising agencies that contracted with Google to purchase TrueView advertisements on behalf of Plaintiffs and members of the Class, Plaintiffs and members of the Class are intended third-party beneficiaries of said Contracts, as they were formed with the intent for Plaintiffs and members of the Class to benefit from the Contract and make payments under the Contract.

### SECOND CLAIM FOR RELIEF
**Violation of California Unfair Competition Law**
**Business and Professions Code § 17200**
**(On Behalf of Plaintiffs and the Class)**

90.     Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

91.     Google's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq.*

92.     The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in

commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

93.     By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

94.     The UCL expressly provides for injunctive relief, and also contains provisions denoting its public purpose. A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general. Although the private litigant controls the litigation of an unfair competition claim, the private litigant is not entitled to recover compensatory damages for his own benefit, but only disgorgement of profits made by the defendant through unfair or deceptive practices in violation of the statutory scheme or restitution to victims of the unfair competition.

95.     As further alleged herein, Google's conduct violates the "unfair," "unlawful," and "deceptive" prong insofar as Google violates its promises and policies, including by presenting the TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications, and overcharging for inflated views of advertisements.

96.     Google's conduct was not motivated by any legitimate business or economic need or rationale; and the harm and adverse impact of Google's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives.

97.     The harm to Plaintiffs and members of the Class arising from Google's unfair, unlawful, and deceptive practices relating to the placement of TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications, and overcharging for inflated views of advertisements outweighs the non-existent utility of the

practice.

98.    Google's unfair business practices as alleged herein are unlawful, immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff, members of the Class, and the general public.

99.    Google's conduct was substantially injurious to consumers of advertising services in that they have been forced to pay a premium for improper, abusive, and/or unconscionable practices in purchasing TrueView advertisements that were not in accordance with Google's policies and representations.

100.    Moreover, Google committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it affirmatively and knowingly misrepresented and omitted its policies and practice regarding how and where TrueView advertisements would be presented and displaced. Such misrepresentations and omissions misled Plaintiffs and are likely to mislead the public.

101.    Specifically, Plaintiffs relied on Google's misrepresentations and material omissions regarding its TrueView advertisement practices. Specifically, Plaintiffs did not know that Google would not place TrueView advertisements in accordance with their policies, instead violating those policies by, amongst the violations set forth above, presenting the TrueView advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications and by overcharging for inflated views of advertisements. If Plaintiffs knew this were the case, it would not have paid (or would have paid substantially less) for TrueView advertisements.

102.    Such misrepresentations and omissions misled Plaintiffs and are likely to mislead the public. Plaintiffs seek to enjoin Google from misrepresenting and/or omitting this material

and accurate information in the documents that it makes available to existing advertisers and the general public who might consider advertising with Google.

103.   Plaintiffs and members of the Class relied on Google's misrepresentations and omissions in that they received and reviewed the materials provided by Google, and like any reasonable customer, understood these documents to mean that Google would place TrueView advertisements (and charge for them) in accordance with their policies. Had Plaintiffs and others been informed in any of the documents provided by Google that they would be subject to these practices, they not have paid the premium prices they did pay for TrueView advertisements.

104.   As a result of Google's violations of the UCL, Plaintiffs and members of the Class have paid, and/or will continue to pay for TrueView advertisements which were placed as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications as well as amounts which are overcharged due to inflated views of advertisements, and thereby have suffered and will continue to suffer actual damages.

105.   Absent injunctive and public injunctive relief prohibiting Google from misrepresenting and omitting material information concerning its TrueView advertisement policy at issue in this lawsuit, Plaintiffs and other existing advertisers, and the general public will be exposed to Google's conduct violative of the UCL.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

106.   Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs, except paragraphs 74 to 89 (previous counts), to which this claim is pled in the alternative.

107.   To the detriment of Plaintiffs and the Class, Google has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein, that Google did not provide

the TrueView advertisements as Plaintiffs expected, instead serving advertisements that were insufficient for many reasons including that they served advertisements as muted, scroll-initiated videos, outstream, and/or on non-compliant websites and applications.

108. Google also received overpayments due to artificially inflated views of TrueView advertisements, as alleged above.

109. Plaintiffs and the Class conferred a benefit on Google in the form of payments for the TrueView advertisements.

110. Google unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Google to retain.

111. Google's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

112. Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained payments received by Google as a result of its inequitable conduct as more fully stated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Public injunctive relief against Google's deceptive and unfair conduct towards the general public;

2. Declaring Google's TrueView advertising policies and practices to be wrongful, unfair and unconscionable;

3. Restitution of all, or alternatively, the premium charged for TrueView advertisements which were placed as muted, scroll-initiated videos on third-party websites and applications paid to Google by Plaintiffs and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

1    4.    Disgorgement of the ill-gotten gains derived by Google from its misconduct;

2    5.    Actual damages in an amount according to proof;

3    6.    Punitive and exemplary damages;

4    7.    Pre-judgment interest at the maximum rate permitted by applicable law;

5    8.    Costs and disbursements assessed by Plaintiffs in connection with this action,

6 including reasonable attorneys' fees pursuant to applicable law; and

7

8    9.    Such other relief as this Court deems just and proper.

9

10                              **DEMAND FOR JURY TRIAL**

11         Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this

12 Complaint that are so triable as a matter of right.

13

14 Dated: July 26, 2023                    Respectfully submitted,

15

16

17                                         */s/ John J. Nelson*
                                           John J. Nelson (SBN 317598)
18                                         **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
19                                         402 W Broadway, Suite 1760
                                           San Diego, CA 92101
20                                         Tel.:    (858) 209-6941
                                           jnelson@milberg.com
21
                                           Gary M. Klinger *(pro hac vice forthcoming)*
22                                         **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
23                                         227 W. Monroe Street, Suite 2100
                                           Chicago, IL 60606
24                                         Phone: 866.252.0878
                                           Email: gklinger@milberg.com
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kristen Lake Cardoso (State Bar # 338762)
cardoso@kolawyers.com
Jeff Ostrow (*pro hac vice to be filed*)
ostrow@kolawyers.com
Jonathan M. Streisfeld (*pro hac vice to be filed*)
streisfeld@kolawyers.com
Daniel Tropin (*pro hac vice to be filed*)
tropin@kolawyers.com
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
Fax: (954) 525-4300

*Attorneys for Plaintiffs and the Putative Class*

CLASS ACTION COMPLAINT